## CIRCUIT COURT OF ALBEMARLE COUNTY

A.B.,
by her guardian ad litem,
Elizabeth P. Coughter

v.

C.D.,
J.K., and
Commonwealth of Virginia

September 15, 1995

Case No. (Law) 5871-L

BY JUDGE PAUL M. PEATROSS, JR.

The plaintiff, A.B., through her guardian ad litem, Elizabeth P. Coughter, has filed a medical malpractice action against the defendants, C.D., J.K., and the Commonwealth of Virginia. The plaintiff alleges that the defendants negligently provided health care services to her during the period between August of 1987 and December of 1993. Defendant J.K. has asserted a plea of sovereign immunity, and the Court heard evidence at a hearing on this issue on July 10, 1995. The sole issue now before the Court is whether J.K. is entitled to sovereign immunity. The material facts relevant to this issue are not in dispute.

### I. *Facts*

A.B. is an adult who, in 1987, was diagnosed as suffering from a dissociative disorder commonly referred to as multiple personality disorder. In August, 1987, Dr. Eddythe Carr, a psychologist from Bristol, Virginia, referred A.B. to the University of Virginia Health Sciences Center ("UVA") for an inpatient medical evaluation. At that time, A.B. met C.D., a clinical psychologist on staff with the University of Virginia Department of Behavioral Medicine and Psychiatry ("the Department"). After her discharge in September, 1987, A.B. moved from southwestern Virginia to Charlottesville, and C.D. provided her with follow-up outpatient care.

In July, 1988, after A.B. ceased to have insurance coverage, C.D. reported in a note to the patient's file that he had agreed to help A.B. on a "friendship rather than paid professional basis." After that time, C.D. kept no further regular patient records regarding A.B. on file.

On March 22, 1989, Dr. Carr telephoned UVA's Quality Assurance Division to report that friends and/or family of A.B. had expressed concern to Dr. Carr that C.D. was providing inadequate care for and had become inappropriately involved with A.B. After receiving this information from the Quality Assurance Division, Dr. John Ashley, UVA Executive Director of Hospitals, instructed J.K., the Chair of the Department, to investigate the allegations.

J.K.'s inquiry included a telephone call to the Quality Assurance Division to confirm the substance of the concerns relayed by Dr. Carr. J.K. interviewed C.D. by telephone and requested, and later received, from C.D. a written explanation and description of C.D.'s relationship with A.B. A.B. subsequently both telephoned and wrote J.K. informing him that she had no complaints about her relationship with C.D. and, indeed, was pleased with her progress as a patient. Through a telephone conversation with Dr. Carr, J.K. determined that Dr. Carr professed no first-hand knowledge of any impropriety between A.B. and C.D.; and although a friend of A.B. did call J.K. asserting that something should be done about the relationship between A.B. and C.D., the friend would not provide specific allegations of impropriety.

Based on his findings, on March 28, 1989, J.K. reported to Dr. Ashley that he had discovered nothing to indicate that the relationship between A.B. and C.D. was detrimental to A.B.'s mental or physical health. Dr. Ashley deemed the report sufficient, and the investigation was closed.

On July 31, 1989, A.B. and C.D. were married. Plaintiff has alleged, and for the purposes of this motion, Defendant J.K. does not contest, that C.D. continued to treat A.B. for multiple personality disorder until 1993 when A.B. and C.D. separated. C.D. did not provide any treatment to A.B. at UVA after August, 1988.

## II. *Analysis*

Summary judgment may be granted only when no material fact is genuinely in dispute. *Emerson v. Decker Realty Corp.*, 232 Va. 71, 348 S.E.2d 239 (1986). In the instant care, defendant J.K. asserts that summary judgment is appropriate because he is entitled to sovereign immunity.

The Supreme Court of Virginia has established a four-factor test for determining whether a state employee is entitled to sovereign immunity from tort liability. *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984). The factors to be considered are as follows:

(1) the nature of the function performed by the employee;
(2) the extent of the state's interest and involvement in the function;
(3) the degree of control and direction exercised by the state over the employee; and
(4) whether the act complained of involved the use of judgment and discretion.

*Messina*, 228 Va. at 313. Applying this test to the instant facts, the Court finds that J.K. is entitled to sovereign immunity.

A. *The Nature of the Function Performed by the Employee*

An attending physician working in a teaching hospital may serve more than one function, and the level of the state's interest in a physician's performance varies according to the particular function served. *See James*, 221 Va. at 54. The *James* court specifically recognized as distinct the functions of patient care and health care administration. *See id.*

In the instant case, the evidence in the record reveals that at all times relevant to this action, J.K. had no direct patient care responsibilities. He had seen no private patients since 1985. As chair of the Department, J.K. acted solely as an administrator.

It was in J.K.'s capacity as administrator that his "boss," Dr. John Ashley, the executive director of UVA, contacted him to order an investigation into the relationship between A.B. and C.D. It is true that J.K., as a board-certified physician, had the requisite training and knowledge to provide psychological care to A.B. had that care been requested. However, Dr. Ashley did not require J.K. to provide a second opinion on A.B.'s diagnosis or to prescribe a different course of treatment for her. J.K.'s only function was to evaluate whether the care C.D. was providing to A.B. was appropriate.

The plaintiff contends that J.K. became involved in A.B.'s care by conducting his investigation inadequately and by allowing C.D.'s care of A.B. to continue. Otherwise stated, this argument suggests that by negligently performing an administrative function, an employee of a state hospital can

be subject to liability because his actions ultimately affect patient care. However, all administrative decisions affect patient care to some extent, and the Supreme Court has clearly stated that sovereign immunity attaches to such decisions. *See Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973) (hospital administrators performing supervisory functions entitled to sovereign immunity).

B. *The Extent of the State's Interest and Involvement in the Function*

The *James* court stated that while the Commonwealth's interest in the treatment of a particular patient is "slight," the Commonwealth has a "paramount" interest in staffing the University of Virginia Hospital and Medical School with efficient and competent administrators and professors. *James*, 221 Va. at 54. In furtherance of this interest, the Medical Policy Committee exists to govern the University Health Sciences Center. The Committee works through the director of the Hospital, and it was the director of the Hospital, Dr. Ashley, who assigned the investigation to J.K. Clearly, J.K.'s function, to probe C.D.'s competency in providing care to A.B., served the state's paramount interest in maintaining a competent staff in its Hospital.

C. *The Degree of Control and Direction Exercised by the State Over the Employee*

In considering the element of state control, the *James* court compared the different levels of control exercised by the employer in *Lawhorne* over its employees. *James*, 221 Va. at 53-54. The court noted that the state granted the hospital administrators in *Lawhorne* broad discretion because of the nature of the functions they performed. *Id.* In contrast, the intern was subject to close state control because of his inexperience and, moreover, because close supervision of interns was statutorily mandated. *Id.* The *Lawhorne* court held that both the administrators and the intern were entitled to immunity. *Lawhorne*, 214 Va. at 407-08.

In the instant case, J.K. acted solely in his capacity as an administrator. It was Dr. Ashley, an agent of the state, who controlled whether, when, and by whom an investigation would be conducted; and it was Dr. Ashley who controlled whether and when the investigation was sufficient to be closed. It is true that J.K. exercised considerable discretion in conducting the investigation. However, he exercised no more discretion than was inherent to his role and to the function he was performing.

D. *Whether the Act Complained of Involved the Use of Judgment and Discretion*

The plaintiff does not contest, and the Court accordingly finds, that J.K. exercised sufficient discretion to satisfy this element of the *James* test.

### III. *Conclusion*

For the above stated reasons, the Court finds that J.K. is entitled to sovereign immunity. Accordingly, the Court grants J.K.'s Motion for Summary Judgment.